USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-1-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS FLORES,

                    Plaintiff,                    17-cv-0036 (JGK)

        - against -

UNITED STATES DEPARTMENT OF JUSTICE,              OPINION AND ORDER

                    Defendant.

JOHN G. KOELTL, District Judge:

The pro se plaintiff, Louis Flores, claims that the defendant, the United States Department of Justice, did not sufficiently fulfill a request for information the plaintiff filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The defendant has moved for summary judgment dismissing the plaintiff's claim. The defendant's motion is **granted.**

## I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are

any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Moreover, courts liberally construe a pro se plaintiff's pleadings and briefs and "interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quotation marks omitted). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving

party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993); <u>see also</u> <u>Scotto v. Almenas</u>, 143 F.3d 105, 114-15 (2d Cir. 1998).

"[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment." <u>Ferguson v. Fed. Bureau of Investigation</u>, No. 89cv5071, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995) (citing <u>Carney v. U.S. Dep't of Justice</u>, 19 F.3d 807, 812 (2d Cir. 1994)), <u>aff'd sub nom.</u> <u>Ferguson v. FBI</u>, 83 F.3d 41 (2d Cir. 1996). "Affidavits submitted by an agency are 'accorded a presumption of good faith . . . .'" <u>Carney</u>, 19 F.3d at 812 (quoting <u>Safecard Servs., Inc. v. SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

## II.

### A.

On April 25, 2016, the plaintiff filed a FOIA request for four categories of records relating to speeches made by Preet Bharara, then-United States Attorney for the Southern District of New York:

(1) All records and information pertaining to dates, times, hosts, locations, and other information pertaining to speeches made by U.S. Attorney Bharara since he commenced serving as U.S. Attorney for the Southern District of New York;

(2) All records, complete recordings in any format whatsoever (either digital or physical), complete transcrip[t]s, and other information pertaining to the complete speeches made by U.S. Attorney Bharara, including any question and answer sessions, since he commenced serving as U.S. Attorney for the Southern District of New York;

(3) All records and information pertaining to the costs . . . paid by the U.S. Attorney's Office for U.S. Attorney Bharara and his staff to travel to and attend the appearances made outside of Manhattan, where U.S. Attorney Bharara has delivered speeches, including, but limited to,[1] air fare, ground transportation, hotel accom[m]odations, meals, entertainment, per diem allowances, and all other costs incidental [to] or associated with speeches made by U.S. Attorney Bharara; and

(4) All records and information pertaining to the policies, procedures, customs, traditions, guidelines, or other instructions followed by staff of the U.S. Attorney's Office for the Southern District of New York to record in any format whatsoever (either digital or physical), transcribe, and/or preserve any recordings and/or transcriptions of the speeches made by U.S. Attorney Bharara since he commenced serving as U.S. Attorney for the Southern District of New York.

Francis Decl. Ex. A at 1, 4. The plaintiff requested expedited processing and a fee waiver, claiming that "the information requested is urgently needed in order to be disseminated to inform the public about actual or alleged Federal Government activity" and that he was a reporter. Id. at 4.

In a letter dated May 23, 2016, the Executive Office for United States Attorneys ("EOUSA") provided the plaintiff with a FOIA request number and informed the plaintiff that his request

_____

[1] The plaintiff presumably meant "including but not limited to."

4

had been assigned to the "Complex track."[2] Francis Decl. Ex. B. In another letter with the same date, EOUSA informed the plaintiff that his request for expedited processing was denied. Francis Decl. Ex. C. EOUSA then submitted the plaintiff's request for documents to the United States Attorney's Office for the Southern District of New York ("SDNY"), and SDNY began its search for the requested records. Francis Decl. ¶ 8.

In a letter dated August 15, 2016, EOUSA notified the plaintiff that his fee waiver request was denied. Francis Decl. Ex. E. On the same day, EOUSA issued a fee letter to the plaintiff in which it assessed a fee of $1,120 for the search time necessary to find the plaintiff's requested records. Francis Decl. Ex. F. The plaintiff did not respond to the letter or, as required, pay the $1,120 in advance, and therefore his FOIA request was closed. See Francis Decl. ¶ 12, Ex. G. However, the plaintiff appealed EOUSA's denial of his fee-waiver request to the Department of Justice's Office of Information, which remanded the plaintiff's request to EOUSA. Francis Decl. Exs. H–I. On April 12, 2017, EOUSA granted the plaintiff's fee-waiver request on public interest grounds and stated that it would make the material available to the plaintiff at no charge. Francis Decl. Ex. J. The plaintiff's FOIA case was reopened and SDNY's

---

[2] EOUSA assigns incoming requests to a simple, complex, or expedited track. See Francis Decl. Ex. B.

search for the relevant records went forward. Francis Decl. ¶ 17.

**B.**

Government personnel took numerous actions to locate records that were responsive to the plaintiff's request. The SDNY FOIA point of contact consulted with the SDNY Press Office for the various relevant records in the Press Office's possession, including written documents, demonstratives, and video files. Hodge Decl. ¶ 13. Moreover, the Associate U.S. Attorney, who screens events where the U.S. Attorney is invited to speak to ensure compliance with the Government's ethics rules and other restrictions, searched various files and an internal network to locate responsive material. Id. ¶ 14. SDNY personnel also contacted EOUSA to locate relevant "policies, procedures, customs, traditions, guidelines, or other instructions" that were provided to U.S. Attorney Bharara. Id. ¶ 15. Additionally, administrative assistants searched the network drives maintained by or on behalf of U.S. Attorney Bharara at SDNY for further responsive records. Id. ¶ 16. Finally, personnel in the SDNY budget department used the department's system to generate reports setting forth information related to the plaintiff's request for records and information pertaining to the costs SDNY paid for U.S. Attorney Bharara and his staff to travel for appearances outside Manhattan. Id. ¶ 17.

6

The defendant released the responsive records that it had gathered to the plaintiff in three batches. EOUSA issued the first release on April 27, 2017, "which included, among other things, the prepared text of remarks, visual aids, photographs of demonstratives, and other materials associated with speeches, press conferences, testimony, and other public appearances by U.S. Attorney Preet Bharara." Francis Decl. ¶ 17, Ex. K. These records were released in full and not redacted. Francis Decl. ¶ 17. The records were released to the plaintiff initially in a series of nine emails and, after the plaintiff informed the defendant that he had not received all the emails, the SDNY FOIA point of contact sent the emails again and mailed the plaintiff a DVD containing the records. Hodge Decl. ¶ 19.

EOUSA released the second batch of records to the plaintiff on June 2, 2017. Francis Decl. ¶ 18, Ex. L. This release included public records found in SDNY as well as additional copies of records sent to the plaintiff in the first release. Francis Decl. ¶ 18. The records in the second release were contained on both a DVD and on a flash drive to address concerns that the plaintiff relayed about being unable to use the DVD sent with the first release of records. Hodge Decl. ¶ 20.

Between approximately June 3 and June 14, 2017, SDNY's FOIA point of contact provided EOUSA with around 1243 pages of records for its review and release determinations. Francis Decl.

¶ 19. SDNY staff members also reviewed additional records not provided to EOUSA. Id. EOUSA issued the third release of records to the plaintiff on June 16, 2017. Id. This release contained 858 pages in full, 179 pages in part, and fifty-three videos in full. Francis Decl. ¶ 20, Ex. M. The release withheld 206 pages in full. Id. A number of the pages withheld in full were determined to be nonresponsive to the plaintiff's request, and other records and portions of records were withheld on the basis of FOIA exemptions (b)(5) and (b)(6).[3] Francis Decl. ¶ 20. This third release of records included, among other things,

> additional documents that appeared to reflect the final version of the prepared text of remarks given by U.S. Attorney Bharara, transcripts of remarks given by U.S. Attorney Bharara, videos of remarks and press conferences given by U.S. Attorney Bharara, cost reports responsive to [the plaintiff's] FOIA request, email correspondences and attachments thereto responsive to [the plaintiff's] FOIA request, and records reflecting policies and guidance relating to record retention by U.S. Attorneys.

Id. The third release also included all records contained in the first two releases. Hodge ¶ 21. The records were sent to the

---

[3] FOIA exemption (b)(5) refers to the Government's ability to withhold inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested . . . .

5 U.S.C. § 552(b)(5). FOIA exemption (b)(6) allows the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . .

Id. § 552(b)(6).

plaintiff on an external hard drive and were also provided to the plaintiff in hardcopy. Id. The plaintiff picked up the hardcopy records from the USAO-SDNY. Id.[4]

The defendant filed a motion for summary judgment in this case on January 31, 2018. The defendant submitted a Vaughn index[5] as part of this filing that addressed the defendant's withholding of information from some of the responsive records under the FOIA exemptions. See Dkt. No. 50, Ex. N. The plaintiff requested that the Vaughn index be supplemented to include additional information that would help him match the records in the index with the records he received, and the defendant complied. Francis Decl. ¶ 32, Ex. N. While the Vaughn index was being revised, SDNY personnel identified approximately sixty-one pages of records withheld in full or in part in the third release of records that needed further review. Francis Decl. ¶ 32. The records were further reviewed and released to the plaintiff, with some information withheld pursuant to FOIA exemptions (b)(5) and (b)(6). Id. The plaintiff picked up a flash drive containing these additional records and the revised Vaughn index at SDNY during August 2018. Id. ¶ 33. The plaintiff requested another electronic copy of the additional records, and

---

[4] The SDNY FOIA point of contact located one record wrongfully withheld in full while reviewing the final release. Francis Decl. ¶ 21. This record was made available in part to the plaintiff on January 31, 2018. Id.

[5] See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

the defendant made a second copy available for pick up. Id. ¶ 34.

In view of the plaintiff's desire to settle this case, the defendant withdrew its January 31, 2018 motion for summary judgment in August 2018 without prejudice to renewal. See Dkt. No. 68. The defendant then refiled its motion for summary judgment on September 28, 2018. After the plaintiff filed his opposition brief to this motion, the defendant voluntarily undertook an additional search for records responsive to the plaintiff's FOIA request. Dkt. No. 84. The SDNY records manager searched SDNY's storage space and located additional records, twenty pages of which were deemed responsive, nonduplicative records. Gelbke Decl. ¶¶ 4-5. These records were then provided to the plaintiff. Id. ¶ 5.

The defendant represents that, in total, it produced over 2,000 pages of documents to the plaintiff pursuant to his request.

## C.

The plaintiff offers several arguments in support of his claim that the defendant has not responded sufficiently to his FOIA request.[6] The plaintiff contends that records of three

---

[6] The plaintiff also argues that the defendant did not expedite his FOIA request properly. However, as explained below, the defendant has provided the plaintiff with a complete response to his request. "A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a

10

particular speeches allegedly made by U.S. Attorney Bharara were
not contained in the defendant's production: (1) a speech
delivered in Saratoga Springs, New York, at a New York Press
Association convention; (2) a speech made at John Jay College
for a Tina Brown event; and (3) a press conference conducted in
January 2015 regarding the prosecution of Sheldon Silver, the
longtime leader of the New York State Assembly. According to the
plaintiff, the fact that the defendant did not produce records
related to these speeches indicates that its search was
incomplete and executed in bad faith. The plaintiff also
contends that he requested notes related to, and incomplete
drafts of, speeches given by U.S. Attorney Bharara but that the
defendant has not produced such material.

The plaintiff next argues that the defendant's Vaughn index
improperly refers to documents withheld as "nonresponsive"
without further explanation. The plaintiff adds that because the
defendant produced other nonresponsive documents, it must
produce these documents identified in the Vaughn index as
nonresponsive, as well as others. In addition, the plaintiff
contends in his sur-reply that the defendant withheld several

complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). In any event,
the plaintiff has not provided any facts demonstrating a "compelling need"
for the records – namely, that failure to obtain the records "could
reasonably be expected to pose an imminent threat to the life or physical
safety of an individual," or that there was a particular "urgency to inform
the public concerning actual or alleged Federal Government activity." Id.
§ 552(a)(6)(E)(ii), (v).

documents or parts of documents pursuant to FOIA exemptions (b)(5) and (b)(6) without a valid basis.

Moreover, the plaintiff argues that the defendant's search for records was inadequate because the declarations submitted in support of the search do not indicate that "paper files" or the "National Archives and Records Administration" ("NARA") were searched. The plaintiff also argues that the Court cannot rely upon these declarations because the individuals who made the declarations do not have personal knowledge of the defendant's search and because the declarations do not describe the search adequately.

Finally, the plaintiff argues that because the defendant executed a voluntary search after it filed its motion for summary judgment, and located additional responsive records, it follows that the initial search was inadequate and conducted in bad faith. The plaintiff adds that he has not been provided with an updated Vaughn index accounting for the records the defendant provided after its voluntary search.[7]

---

[7] The plaintiff also asserts that the defendant has a "pattern or practice" of violating FOIA, which must be addressed at a "pattern or practice hearing." But the Second Circuit Court of Appeals "has not yet recognized or articulated the inquiry relevant to a pattern or practice claim in the FOIA context." Pietrangelo v. U.S. Army, 334 F. App'x 358, 360 (2d Cir. 2009). In any event, as explained below, the defendant's response to the FOIA request does not raise any concern that the defendant failed to comply with FOIA.

## III.

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney, 19 F.3d at 812 (citing 5 U.S.C. § 552(a)(4)(B)). To show that its search was "adequate," an agency must demonstrate that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (quotation marks omitted). "This standard does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness . . . ." Adamowicz v. IRS, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). The reasonableness of a search may be "established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith." Id.

### A.

The plaintiff challenges two declarations describing the defendant's search under Federal Rule of Civil Procedure 56(c)(4) for lack of personal knowledge. The first declarant, Tricia Francis, is an attorney-advisor for EOUSA and assigned to the component of EOUSA that administers FOIA requests. Francis Decl. ¶ 1. Her declaration thoroughly describes her myriad

13

responsibilities and expressly confirms her familiarity with the procedures EOUSA followed in responding to the plaintiff's request. Id. ¶¶ 2-3. Additionally, her declaration is more than "relatively detailed" in its description of the search. See Adamowicz, 552 F. Supp. 2d at 361. The second declarant, Darian Hodge, is the FOIA point of contact in SDNY. See Hodge Decl. ¶ 1. His declaration also describes his responsibilities and familiarity with SDNY's procedures, id. ¶¶ 2-6, and sets out in detail the procedures carried out pursuant to the plaintiff's request. Although the declarants were not personally involved in every part of the defendant's search, the declarations sufficiently establish the declarants' personal knowledge of the relevant FOIA procedures and the search. See Davis v. U.S. Dep't of Homeland Sec., No. 11cv203, 2013 WL 3288418, at *8 (E.D.N.Y. June 27, 2013) (holding that a supervisory position, combined with a thorough description of the search and familiarity with relevant procedures, constitutes sufficient personal knowledge); Willis v. U.S. Dep't of Justice, 581 F. Supp. 2d 57, 66 (D.D.C. 2008) (stating that declarations "may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search").

The plaintiff next argues that because the defendant did not produce records related to three particular speeches he alleges were given by U.S. Attorney Bharara, the defendant's

14

search was not adequate. The plaintiff adds that the Francis and Hodge declarations are incomplete because they do not describe searching for records of those speeches. However, the plaintiff provides nothing other than his own speculation that records relating to the three speeches exist, and such speculation cannot rebut the validity of the declarations. SafeCard Servs., 926 F.2d at 1200. Indeed, as to one of the three speeches – the Saratoga Springs speech – Department of Justice personnel indicated to the plaintiff before he filed this lawsuit that the speech was not covered by the Department's press and there was no transcript of the speech. See Dkt. 2, Exs. A–C. Moreover, as discussed in further detail below, there is no evidence that the defendant conducted its search in bad faith such that the Court could reasonably infer that records relating to the three speeches exist and were improperly withheld. Thus, the plaintiff's argument fails. See Miller v. U.S. Dep't of State, 779 F.2d 1378, 1385 (8th Cir. 1985) (holding that an agency is not required "to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found"); see also Nat'l Inst. of Military Justice v. U.S. Dep't of Def., 404 F. Supp. 2d 325, 349 (D.D.C. 2005) (rejecting a challenge to the adequacy of a search based on nonproduction of documents referenced in produced documents where, as here, it

was "clear that the defendant's search was reasonably designed to discover all responsive documents"), aff'd, 512 F.3d 677 (D.C. Cir. 2008).

The plaintiff further argues that because the defendant executed a voluntary search after filing its summary judgment motion, and located additional responsive records, its initial search was necessarily inadequate. But, if anything, the fact that the defendant voluntarily undertook another search highlights the defendant's good faith in carrying out the plaintiff's request. See Meeropol v. Meese, 790 F.2d 942, 953 (D.C. Cir. 1986) (stating that "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file" and that "additional releases suggest a stronger, rather than a weaker, basis for accepting the integrity" of a search (quotation marks omitted)); Conti v. U.S. Dep't of Homeland Sec., No. 12cv5827, 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) (same); see also Nat'l Inst. of Military Justice, 404 F. Supp. 2d at 333-34 (holding that an agency's initially insufficient search did not demonstrate bad faith where it conducted additional searches after the parties discussed the specific type of documents the plaintiff sought).

Next, the plaintiff contends that the defendant's search was inadequate because the defendant did not search "paper files" and did not refer the plaintiff's request to, or search,

NARA. The plaintiff does not specify which "paper files" were not searched, and the Francis and Hodge declarations indicate that the defendant conducted a comprehensive search that included all places where responsive documents might be located. See Francis Decl. ¶¶ 17–18; Hodge Decl. ¶¶ 13–18. Moreover, after the plaintiff filed his opposition papers to the defendant's summary judgment motion, the SDNY records manager searched SDNY's storage space for hardcopy records. Gelbke Decl. ¶ 4. The defendant also confirmed that no hardcopy records relating to U.S. Attorney Bharara have been sent to NARA. Id. ¶ 6. Additionally, the plaintiff does not cite any authority that would require the defendant to refer his request to NARA, and the defendant points out that the plaintiff could file a FOIA request with NARA or search NARA's website for the records he seeks.

Finally, the plaintiff contends that the defendant failed to produce notes related to, and incomplete drafts of, speeches given by U.S. Attorney Bharara. The relevant portion of the plaintiff's request asks for:

> All records, complete recordings in any format whatsoever (either digital or physical), complete transcrip[t]s, and other information pertaining to the complete speeches made by U.S. Attorney Bharara, including any question and answer sessions, since he commenced serving as U.S. Attorney for the Southern District of New York . . . .

Francis Decl. Ex. A at 4. The plaintiff claims that his request

for "all records . . . and other information pertaining to the

complete speeches" necessarily includes notes and other

information in incomplete form that relate to complete speeches,

and that such records were not produced.

The defendant explained at oral argument of this motion

that it did, in fact, search for notes related to, and

incomplete drafts of, complete speeches delivered by U.S.

Attorney Bharara. The defendant confirmed that it delivered all

such records to the plaintiff; but it did not provide the

plaintiff with notes and drafts related to speeches that were

not given, because the plaintiff did not request those

materials. The defendant's representation on this point is

consistent with the expansive search efforts detailed in the

declarations attached to the defendant's motion and described

above.

Therefore, the Court concludes that the defendant did

search for and produce notes and other information in incomplete

form related to complete speeches given by U.S. Attorney

Bharara. Accordingly, the plaintiff's argument fails.

**B.**

The plaintiff also argues, for the first time in his sur-

reply, that the defendant did not properly apply FOIA exemptions

(b)(5) and (b)(6) when withholding records or parts of records.

"It is well established . . . that a court should not 'consider arguments that are raised for the first time in a reply brief.'" Mateo v. Bristow, No. 12cv5052, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006)).

In any event, the plaintiff raises only one nonconclusory point to support his argument: he did not request documents concerning the "private, personal, medical, or personnel affairs of any individuals," and thus exemption (b)(6) cannot apply. Pl.'s Sur-Reply at 3. But exemption (b)(6) is not so narrow. It allows for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). "[A] record is a 'similar file' if it contains personal information identifiable to a particular person." Cook v. Nat'l Archives & Records Admin., 758 F.3d 168, 175 (2d Cir. 2014). The defendant sufficiently explained why its withholdings under exemption (b)(6) were justified, even if the withheld documents or portions of documents did not concern personnel or medical matters. See Francis Decl. ¶¶ 26-30, Ex. N.

C.

The plaintiff also raises two arguments related to the Vaughn index the defendant provided in this case. First, the plaintiff contends that the Vaughn index improperly refers to

some withheld documents as "nonresponsive" without further explanation. Relatedly, the plaintiff adds that because the defendant produced other nonresponsive documents, including redundant documents, it must produce these documents identified in the Vaughn index as nonresponsive, as well as others. Second, the plaintiff argues that the defendant has failed to produce an updated Vaughn index accounting for the records the defendant provided after its voluntary search of SDNY's storage space.

A Vaughn index "must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 774 (D.C. Cir. 2002). "The purpose of a Vaughn index is to afford a FOIA plaintiff an opportunity to decide which of the listed documents it wants and to determine whether it believes it has a basis to defeat the Government's claim of a FOIA exemption." N.Y. Times Co. v. U.S. Dep't of Justice, 762 F.3d 233, 237 (2d Cir. 2014).

The plaintiff's first argument fails because although the defendant need not have listed any records withheld as nonresponsive in its Vaughn index, doing so does not require the release of such records or any further justification of their

withholding.[8] Competitive Enter. Inst. v. U.S. Envtl. Prot.
Agency, 12 F. Supp. 3d 100, 114 (D.D.C. 2014). Moreover, the
plaintiff's complaint that he has received redundant — and
therefore nonresponsive — copies of records is of no moment. The
fact that a responsive record is redundant does not render it
nonresponsive. And the allegedly redundant records likely stem
from the defendant's attempt to accommodate the plaintiff's
complaint that he could not access all the documents in the
first release of records, or the plaintiff's own request for
additional copies. Nothing in the record indicates that the
defendant carried out its responsiveness determinations
improperly, Leopold v. Cent. Intelligence Agency, 177 F. Supp.
3d 479, 489-90 (D.D.C. 2016), or that the defendant "pollut[ed]
the final sample with irrelevant documents" rendering its
production inadequate, Competitive Enter. Inst., 12 F. Supp. 3d
at 114.

The plaintiff's second argument also fails. The defendant's
voluntary production of records — made after it provided the

---

[8] At least one court of appeals has held that an agency cannot redact
some information for being nonresponsive when that information appears on an
otherwise responsive record. Am. Immigration Lawyers Ass'n v. Exec. Office
for Immigration Review, 830 F.3d 667, 679 (D.C. Cir. 2016). However, in this
case, the records listed as nonresponsive in the defendant's Vaughn index
were withheld in full. The defendant explained at oral argument of this
motion that the records were listed as nonresponsive in the Vaughn index,
rather than removed from the index, because the records were withdrawn after
initially being included in the index, and removing them from the index would
cause gaps in the index's numbering system.

plaintiff with the Vaughn index – did not involve any withholdings based on a FOIA exemption. Therefore, it was unnecessary to make any revisions to the Vaughn index that the plaintiff possessed.

## IV.

Finally, the plaintiff purports to "renew[] his request for an impartial judge" in his papers opposing the defendant's summary judgment motion. Opp. at 7-8; Pl.'s Sur-Reply at 11-12. His initial motion for reassignment was denied by this Court, Dkt. No. 30, and his appeal of that decision was dismissed for lack of jurisdiction, Flores v. U.S. Dept. of Justice, No. 17-3621, Dkt. No. 58 (2d Cir. Mar. 13, 2018). In his current papers, the plaintiff has failed to renew his motion through any acceptable procedural mechanism;[9] he cannot do so by summarily requesting renewal of the motion in his papers opposing the defendant's summary judgment motion. In any event, "[c]onsideration of a motion for recusal is committed to the sound discretion of the district court, and there is a substantial burden on the moving party to show that the judge is not impartial." Lamborn v. Dittmer, 726 F. Supp. 510, 514 (S.D.N.Y. 1989) (citations omitted). The plaintiff "must show a true personal bias, and must allege specific facts and not mere

---

[9] Indeed, it is not clear whether the plaintiff properly filed his initial motion for reassignment. See Dkt. No. 34 at 9-10.

conclusions or generalities." Sharkey v. J.P. Morgan Chase & Co., 251 F. Supp. 3d 626, 630 (S.D.N.Y. 2017) (quotation marks omitted). The plaintiff has not provided any evidence of personal bias and no such bias exists. The request for reassignment is **denied.**

### CONCLUSION

The Court has considered all the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendant's motion for summary judgment is **granted,** and the plaintiff's request for reassignment is **denied.** The Clerk is directed to enter judgment dismissing this case **with prejudice.** The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:    **New York, New York**
             **August 1, 2019**

                                  **John G. Koeltl**
                      **United States District Judge**